UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DAVID LANEY, JEREMY ADAMS, KEVIN HOLMES, and DOUGLAS MONEYPENNY, Individually and on Behalf of Others Similarly Situated, | § § § § § | |
| Plaintiffs, | § § | SA-17-CA-650-FB-HJB |
| v. | § § | |
| REDBACK ENERGY SERVICES, LLC; REDBACK COIL TUBING, LLC; MIKE FERNANDEZ; PAUL JACOBI, DANTE DOMENICHELLI; PHIL LANCASTER; and MARK LAYTON, | § § § § § § | |
| Defendants. | § § | |

**ORDER**

This Order concerns Plaintiffs' Motion for Conditional Certification (Docket Entry 21) and Plaintiffs' Motion for Approval and Distribution of Notice and for Disclosure of Contact Information (Docket Entry 22). Pretrial matters have been referred to the undersigned for disposition pursuant to 28 U.S.C. § 636(b). (*See* Docket Entry 9.) For the reasons set out below, Plaintiffs' Motion for Conditional Certification (Docket Entry 21) is **GRANTED IN PART**, and Plaintiffs' Motion for Approval and Distribution of Notice and for Disclosure of Contact Information (Docket Entry 22) is **HELD IN ABEYANCE**.

**I.     Jurisdiction.**

Plaintiffs' suit alleges violations of the Fair Labor Standards Act ("FLSA"). This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq.*

## II. Background.

This a putative collective action suit to recover unpaid overtime compensation and other damages under FLSA, 29 U.S.C. § 201, *et seq.* (Docket Entry 10, at 2.) Defendants Redback Energy Services, LLC, and Redback Coil Tubing, LLC (collectively "Redback") provide products and services in the oil and gas industry. (*Id.* at 3.) Defendants Fernandez, Jacobi, Domenichelli, Lancaster, and Layton are all executives of Redback and are alleged to be "employers" within the meaning of FLSA.[1] (Docket Entry 10, at 5–6.) Plaintiffs allege that they were employed by Defendants as Supervisors within the three years preceding the filing of this lawsuit. (Docket Entry 10, at 3–4.)

On July 18, 2017, Plaintiffs filed this collective action on behalf of themselves and other Supervisors who were not paid "lawful overtime compensation for hours worked in excess of forty (40) hours per week." (Docket Entry 1, at 2.) Plaintiffs filed a motion to conditionally certify a putative class consisting of "[a]ll current and former employees of Defendants who were employed as salaried Supervisors at any time since July 18, 2014." (Docket Entry 21, at 3.) Plaintiffs concurrently filed a motion seeking approval and distribution of notice to the putative class. (Docket Entry 22.) Defendants responded to both motions (Docket Entries 26 and 27) and Plaintiffs replied (Docket Entries 28 and 29).

At a scheduling conference held on October 26, 2017, the parties discussed these motions, and the potential impact on the opt-in class in this case that could be caused by previous litigation in which "the same class of employees" was certified for collective action, in a case called *Reynolds v. Redback Energy Services, LLC*, No. 5:15-cv-1145-M (W.D. Okla.). (*See* Docket Entry 28, at 2.) At the conference, the parties made competing proposals for certifying a

---

[1] Redback Energy Services, LLC; Redback Coil Tubing, LLC; and the Redback executives will be collectively referred to as "Defendants."

2

class which would avoid duplication of the claims already addressed in *Reynolds*. The parties subsequently filed supplemental briefing concerning the appropriate scope of the potential opt-in class in light of *Reynolds*. (*See* Docket Entries 36–38.)

### III. Motion for Conditional Certification.

Plaintiffs move to conditionally certify a class comprised of "all current and former employees of Defendants who were employed as salaried Supervisors at any time since July 18, 2014, excluding individuals who settled their claims in the *Reynolds* case and did not continue working after the settlement in *Reynolds*."[2] (Docket Entry 37, at 1.) Defendants object both to certification in general and to the scope of the proposed class.

#### *A. Certification.*

FLSA permits employees to bring an action against their employers for violation of FLSA wage and hour provisions. 29 U.S.C. § 216. Section 216(b) permits an employee to bring an action against his employer on "behalf of [himself] . . . and other employees similarly situated." 29 U.S.C. § 216(b). This type of collective action follows an "opt-in" procedure, under which "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.*

Courts have discretion to allow a party asserting FLSA claims on behalf of others to notify potential plaintiffs that they may choose to "opt-in" to the suit. *See Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989). Although the Fifth Circuit has not adopted a specific standard to be used in determining the propriety of class certification under the FLSA, it has recognized the two-stage approach used by many courts. *See Mooney v. Aramco Servs. Co.*, 54

---

[2] Plaintiffs' initial proposed class did not exclude individuals who settled their claims in the *Reynolds* case and did not continue working for Defendants after the *Reynolds* settlement.

F.3d 1207, 1213–14 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). This two-stage approach involves a "notice" stage and a "decertification" stage, and different evidentiary thresholds apply at each stage. *Mooney*, 54 F.3d at 1213–14.

At the "notice" stage, a plaintiff files a motion to provide notice of the lawsuit to potential class members. *Mooney*, 54 F.3d at 1213–14. The evidentiary standard at this stage is lenient, requiring "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* at 1214 n.8. Nevertheless, a court considering issuing notice to potential class members should be mindful of the "responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation." *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266–67 (D. Minn. 1991).

If the motion to authorize notice is granted, the district court will conditionally certify the class so that putative class members are provided an opportunity to "opt-in" to the lawsuit. *Mooney*, 54 F.3d at 1214. The action then proceeds as a representative action throughout discovery. *Id.* Once discovery is complete, the case proceeds to the second stage of litigation, in which the court may revisit the issue of certification, if the defendant files a motion to decertify the class. *Id.*

In order to demonstrate that conditional certification and notice to potential plaintiffs is proper, a plaintiff must make a minimal showing that "(1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist, (2) that those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted, and (3) that those individuals want to opt-in to the lawsuit." *Casanova v. Gold's Texas Holdings Group, Inc.*, SA:13-CV-1161-DAE, 2014 WL 6606573, at *2 (W.D. Tex. Nov. 19, 2014) (quoting *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 465–66 (S.D. Tex. 2012)).

To determine whether the requisite showing has been made, courts look at the similarity of job requirements and pay provisions for the potential plaintiffs, and at whether they appear to be victims of a common policy or plan. *See Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 238 (N.D.N.Y. 2002); *Butler v. City of San Antonio*, No. SA-03-CA-170-RF, 2003 WL 22097250, at *1–2 (W.D. Tex. Aug. 21, 2003). Job requirements must be similar, but need not be identical; substantial overlap is sufficient. *See Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 824–25 (N.D. Tex. 2007).

Plaintiffs here contend that the pleadings and declarations they have submitted demonstrate that a class of similarly situated potential plaintiffs exists, and therefore conditional certification is proper. (Docket Entry 21, at 5.) In response, Defendants make four arguments: (1) Plaintiffs have not shown they are similarly situated amongst themselves or the putative class; (2) Plaintiffs have not shown others are interested in joining the suit; (3) Plaintiffs' collective action allegations should be dismissed under the first-to-file rule; and (4) equitable considerations bar certification in this case. (Docket Entry 26, at 1–2; Docket Entry 38, at 4.) For the reasons set out below, each of these arguments fails.

1. *Similarly Situated.* Plaintiffs have met their lenient burden of showing that they are similarly situated to the intended notice recipients. As discussed above, the similarly situated element can be shown by similarity of job requirements and pay provisions for the potential plaintiffs, and whether they appear to be victims of a common policy or plan. *See Butler*, 2003 WL 22097250, at *1–2.

Plaintiffs have set forth substantial allegations in their complaint, and have submitted sufficient evidence in supporting declarations, to suggest that the potential plaintiffs are similarly situated with respect to their job duties and pay provisions. (Docket Entry 10, at 7–11; Docket

5

Entries 21-1, 21-2, and 21-3.) Plaintiffs described their primary job duties as "manual labor," including "maintain[ing] and operat[ing] the equipment used at the oilfield well sites." (Docket Entry 21-1, at 1; Docket Entry 21-2, at 1; and Docket Entry 21-3, at 1.) Laney claims that his job included responsibility for "running iron, rebuilding pumps, rebuilding anything that broke on location, rigging up and rigging down coil units, fluid pumps, nitrogen pumps, and wellheads, and mixing chemicals." (Docket Entry 21-1, at 2.) The declarations of other Plaintiffs/putative class members generally state similar duties and responsibilities. (*See* Docket Entry 21-2, at 2 and Docket Entry 21-3, at 2.)[3]

The declarations also show that potential class members were all paid in a similar manner, thus showing them to be subject to a common pay policy. (*See* Docket Entry 21-1, at 2; Docket Entry 21-2, at 2; and Docket Entry 21-3, at 2.) Laney, Holmes, and Moneypenny state in their declarations that "[i]n addition to [their] salary, [they] received regular bonuses as part of [their] regular compensation as a part of a company-wide policy for salaried employees like [themselves]." (*Id.*) Laney, Holmes, and Moneypenny worked at multiple well sites in multiple states, the duties they performed at the various sites were the same, and they received no new training for working at the various different well sites. (*Id.*) Taken together, these statements indicate that the Supervisor position was the same at all of Defendants' locations and the Supervisors were paid in the same manner. This is sufficiently indicative of a common pay

---

[3] Defendants argue (Docket Entry 26, at 9–10) that Plaintiffs Jeremy Adams and Douglas Moneypenny claimed Redback employed them as "Hands/Operators" in another lawsuit against Defendants, and that they are therefore not similarly situated with Supervisors. *See Douglas Moneypenny, et al. v. Redback Energy Services, et al.*, SA-17-CV-00774-XR (W.D. Tex.). Defendants' argument fails. While Adams and Moneypenny were employed by Defendants as Hands/Operators for some period of time, they allege that they were employed as Supervisors at another period of time. (*See* Docket Entry 28, at 5.)

policy. Plaintiffs have made a sufficient showing of similarity to allow for conditional certification.

2. *Interest in Joining Lawsuit.* To obtain conditional certification, a Plaintiff must show that there are other putative class members who will likely desire to opt in. *Casanova*, 2014 WL 6606573, at *2. Defendants argue that Plaintiffs failed to show other putative class members will want to opt in. (Docket Entry 26, at 10.) However, four named plaintiffs already sought to join this lawsuit (Docket Entry 10), and three of the named Plaintiffs filed declarations stating that, based upon their discussions with other Supervisors employed by Defendants, they believe others would want to join this lawsuit. (Docket Entries 21-1, at 3; 21-2, at 3; and 21-3, at 3.) At this early stage, this evidence is sufficiently probative of potential class members' desire to join the litigation to support conditional certification.

3. *First-to-File Rule.* Defendants argue that because an identical class was previously certified in *Reynolds*, the *Reynolds* court has dominant jurisdiction and the first-to-file rule precludes class certification in this case. (Docket Entry 26, at 12.) This is incorrect. The first-to-file rule dictates that, when related cases are pending before two separate federal courts, the court in which the case was last filed may refuse to hear the case if the issues raised by the two cases substantially overlap. *Cadle Co. v. Whataburger of Alice*, 174 F.3d 599, 603 (5th Cir. 1999). This rule is intended to address the principles of comity and sound judicial administration of concurrently pending cases. *Id.* Here, while the issues in two cases overlap, only one of those cases is currently pending.

The *Reynolds* class consisted of "[a]ll specialists and/or supervisors who were employed by Redback Energy Services, LLC and were paid a salary and/or a job bonus, but not paid overtime compensation, during the time period [], 2013 to the present." (Docket Entry 26, at 3.)

7

The *Reynolds* class was certified on March 22, 2016. The parties in *Reynolds* settled their claims and the case was dismissed on April 27, 2017. (Docket Entry 26, at 3.) Plaintiffs subsequently filed this suit on July 18, 2017. (Docket Entry 1.) Because the *Reynolds* class extended no further than 2016, and because that case was settled before this case began, at no point in time were the two cases pending concurrently. Accordingly, the concerns addressed by the first-to-file rule—namely comity and judicial efficiency regarding concurrent cases—are not implicated here. *Cf. Cadle Co.*, 174 F.3d at 603.

   4.   *Equity*. Defendants' final arguments are related to their first-to-file argument, but are rooted in equity. Defendants argue that putative class members in this case were apprised of this potential claim in the *Reynolds* case and "notice to a class who already received notice is unnecessary, inappropriate, duplicitous, and serves only to harass putative class members into joining this case." (Docket Entries 26, at 11–12; 38, at 7.) In support, Defendants cite case law wherein district courts denied requests for "reminder notices," due to the concern that a reminder notice could be interpreted as encouragement by the Court to join the lawsuit. *See, e.g., Knispel v. Chrysler Grp. LLC*, No. 11-11886, 2012 WL 553722, at *8 (E.D. Mich. 2012). Such concerns are inapplicable here, as this is a different case from *Reynolds*, and the class excludes those who joined in that case.[4]

Defendants further argue that sending notice to Plaintiffs' proposed class is inefficient, would result in wasteful duplication and destroy the efficiency that § 216(b) was designed to create. (Docket Entry 38, at 8.) Whatever weight these arguments may carry, they are not determinative considering the lenient notice-stage standard for conditional certification. In any event, Defendants face no serious prejudice: if it becomes apparent that Plaintiffs and any other

---

[4] Prior cases involving similar matters can involve questions of collateral estoppel, *see id.* at 603–04, but none have been raised in this case.

class members' overtime claims should be pursued on an individual basis, Defendants may move to decertify the class. *See Mooney*, 54 F.3d at 1214.

### B. *Scope of Class.*

As noted above, Plaintiffs argue the class should consist of "all current and former employees of Defendants who were employed as salaried Supervisors at any time since July 18, 2014, excluding individuals who settled their claims in the *Reynolds* case and did not continue working after the settlement in *Reynolds*." (Docket Entry 37, at 1.) Defendants argue that if a class is certified in this case, it should be limited to Supervisors hired after March 22, 2016, the day the *Reynolds* class was certified. (Docket Entry 38, at 2.)

In support of their narrowed suggested class, Defendants argue that where overlap occurs, individuals who received notice in a prior collective action should not also receive notice in a subsequent collective action. (*See* Docket Entry 38, at 5 (citing *Turner v. Nine Energy Serv., LLC*, No. H-15-3670, 2016 U.S. Dist. LEXIS 155640, at *23–24 (S.D. Tex. 2016)).) Specifically, Defendants claim that any Supervisor employed on or before class certification in *Reynolds* received notice of "a collective action and were not interested in opting in." (Docket Entry 38, at 5.) This argument is unpersuasive. Notice in one collective action "is obviously ineffective to notify potential plaintiffs of their right to opt in to . . . [a] new case." *Akins v. Worley Catastrophe Response, LLC*, No. 12-2401, 2013 WL 1412371, at *8 (E.D. La. 2013). Choosing not to opt in to the *Reynolds* collective action has no effect on putative class members' rights in relation to this case. *Id.*

Reprising some of their certification arguments, Defendants further contend that providing notice in this case to Supervisors employed at the time *Reynolds* was pending is harassing, inefficient and wasteful, and unduly prejudicial to Defendants. (Docket Entry 38, at 5,

9

7.) None of these contentions are persuasive. Regarding harassment, the cases cited by Defendants concern sending a follow-up notice to putative class members in one case, as opposed to sending initial notice in a separate, subsequent suit. *See, e.g., Leyva v. 35 Bar & Grill, LLC*, No. SA-15-CA-295-FB, 2015 U.S. Dist. LEXIS 136509, at *20 (W.D. Tex. 2015). Regarding waste and inefficiency, the cases cited by Defendants concern the first-to-file rule where collective actions proceed concurrently in different courts. *See Troche v. Bimbo Foods Bakeries Distrib., Inc.*, No. 3:11-CV-234-RJC-DSC, 2011 WL 3565054 (W.D.N.C. 2011); *Cadle*, 174 F.3d at 603. As discussed above, these concerns of inefficiency and wastefulness are not at issue in this case. Similarly, regarding prejudice, the single case cited by Defendants again concerns multiple concurrent FLSA actions. The Court recognizes that there is a risk of duplication in including individuals who previously received notice of their potential claim in the *Reynolds* case; that risk, however, is outweighed by the putative class members' interest in receiving notice of a new lawsuit in which they may have a claim.

Accordingly, the following class is conditionally certified: All current and former employees of Defendants who were employed as salaried Supervisors at any time since July 18, 2014, excluding those individuals who settled their claims in the *Reynolds* case and did not continue working after the settlement in *Reynolds*.

IV.   **Notice and Disclosure of Contact Information.**

Once a court decides that class certification is appropriate, it is within its sound discretion to issue and monitor notice. *Sperling*, 493 U.S. at 171. Granting certification and issuing notice will have "the advantage of informing the original parties and the court of the number and identity of persons desiring to participate in this suit. With that information, analysis may be

performed on the viability of the class and its representatives." *Villatoro v. Kim Son Rest.*, 286 F. Supp. 2d 807, 810 (S.D. Tex. 2003).

Courts routinely grant discovery of identity and contact information for putative plaintiffs once conditional certification has been granted. *See Sperling*, 493 U.S. at 170; *Clarke v. Convergys Customer Mgmt. Grp., Inc.*, 370 F. Supp. 2d 601, 607 (S.D. Tex. 2005); *Jones v. JGC Dallas LLC*, No. 3:11-CV-2743-O, 2012 WL 6928101, at *5 (N.D. Tex. Nov. 29, 2012). Plaintiffs request disclosure of contact information of putative class members and for approval and distribution of notice. (Docket Entry 22.) The contact information Plaintiffs request includes the names, any aliases, last known home and work addresses, and cell phone numbers for each of the putative class members. (Docket Entry 22, at 2.) At this time, the names, any aliases, and last known home addresses of putative class members is sufficient. If such information later proves insufficient, Plaintiffs may seek additional information from Defendants.

Plaintiffs have proposed a form notice to class members for approval. (*See* Docket Entry 22-1.) Although Defendants objected to Plaintiffs' proposed notice, they also requested an opportunity to confer regarding the content of the notice in the event of conditional certification. (Docket Entry 27, at 1–2.) Accordingly, the Court will not address Defendants' objections at this time, but will instead require the parties to confer on the specifics of the notice—including the form and contents of the notice, the delivery method, and the manner of consent—to determine if Defendants' objections can be resolved.

## V. Conclusion.

Based on the foregoing, it is hereby **ORDERED** that Plaintiffs' Motion for Conditional Certification (Docket Entry 21) is **GRANTED IN PART**. It is **FURTHER ORDERED** that

11

Plaintiffs' Motion for Approval and Distribution of Notice and for Disclosure of Contact Information (Docket Entry 22) is **HELD IN ABEYANCE**. The parties must confer on the specifics of the notice, including the form and contents of the notice, the delivery method, and the manner of consent. At or before this conference, Defendants must provide Plaintiffs with the potential class members' contact information, as discussed above. It is **FURTHER ORDERED** that, **within twenty-one (21) days** of the date of this Order, the parties submit to this Court for consideration either a joint proposed notice, or competing options for notice including an indication as to which portions are agreed.

      **SIGNED** on January 25, 2018.

                                                           Henry J. Bemporad
                                                            United States Magistrate Judge